IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Joshua Latron Gallishaw, #251362,  ) | |
| ) | CIVIL ACTION NO: 9:08-3784-CMC-BM |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | |
| Sgt. Melissa Sapp, Officer Glinda Street,  ) | **REPORT AND RECOMMENDATION** |
| Corporal John Doe, Captain Daniel Dubose,  ) | |
| Captain Erin Thomas, Warden Cecilia  ) | |
| Reynolds, and Angela Hardin, Inmate  ) | |
| Grievance Coordinator in their individual  ) | |
| and official capacity,  ) | |
| ) | |
| Defendants.  ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgement pursuant to Rule 56, Fed.R.Civ.P. on February 2, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 3, 2009, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion, with attached exhibits, on April 27, 2009, following which Defendants' filed a reply memorandum on April 29, 2009, followed by a Reply Memorandum from the Plaintiff on May 7, 2009.

- 1 -



Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that on August 29, 2007 the Defendant Sapp (a correctional officer) told Plaintiff to come with her to see a supervisor (which Plaintiff had requested), but that he instead "backed away from her" because he felt "verbally threatened". Plaintiff alleges that he yelled to the Defendant Street (another correctional officer) to "call someone", but that Sapp told her not to. Plaintiff alleges that Sapp then grabbed his arm and threw him into the wall/door and "left broken tissue on my arms from her digging her nails in my skin, when she twisted my arm behind my back." Plaintiff alleges that he did not provoke Sapp, nor was there any penological reason for this "assault".

Plaintiff alleges that Sapp's conduct was "unreasonable" because it was uncalled for, while Street saw what was happening but failed to intervene to protect him from this assault. Plaintiff further alleges that on the way to medical he asked an unidentified corporal to intervene, but that he failed to do so. Plaintiff also alleges that the Defendant Dubose (a Captain) was deliberately indifferent to him because, when Plaintiff tried to talk to him, he said that he was busy. Plaintiff alleges that the Defendant Thomas (also a Captain) was deliberately indifferent because he "disregard[ed] the fact that one of this officer has used force on an inmate and did not even come to

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



- 2 -

see what had happened . . . ." Plaintiff alleges that the Defendant Reynolds (the Warden) was deliberately indifferent to his safety because, by disregarding this assault, future assaults might happen, and also for not taking his mother's telephone call (apparently about this incident). Plaintiff also alleges that the Defendant Hardin, a grievance coordinator, violated his rights by not timely answering his Step II Grievance and by then "lying" by stating that Plaintiff had failed to exhaust his grievance in a timely manner.

Plaintiff also alleges racial discrimination, asserting that a white inmate (James Butler) was not "written up", although they were both "in the same situation". Plaintiff is an African American, while the Defendant Sapp is white. Plaintiff further alleges that Sapp violated his rights by putting him in a "urine infested" holding cell with no shoes on, where he was left for approximately five and one half hours.

Plaintiff has attached an affidavit to his Complaint wherein he sets forth his allegations in greater detail. Plaintiff attests in this affidavit that on August 29, 2007, both he and inmate Butler were trying to get into the canteen. Plaintiff attests that Sapp would not let them go in, although both inmates were later let in the canteen by an "Officer Taylor". Plaintiff attests that Sapp later approached him and asked for his ID, accused him of then refusing to give her his ID, and told him that she was going to write him up for this refusal. Plaintiff attests that he asked Sapp to call a Captain or Lieutenant, but that Sapp refused. Plaintiff attests that he saw Officer Street and asked her to call a Captain or Lieutenant, but that Sapp told Street not to call anybody. Plaintiff alleges that Sapp also started "shaking" her can of mace and acting "real hostile". Plaintiff alleges that Sapp told him to come with her, and that after he refused unless he could see a Captain or Lieutenant, she grabbed him by the right arm, put his hands behind his back, threw him up against the door/wall, and in the process "dug her nails into my skin leaving her claw marks in skin by



- 3 -

breaking skin tissue on my arm." Plaintiff was later taken to medical, and Plaintiff attests that, while at medical, he told the nurse he did not want to see a doctor because he was not "thinking straight" and was upset. Plaintiff was then taken to a holding cell, where he was held without any shoes on a floor that "had urine all over it . . . ." See generally, Verified Complaint, with attached Exhibits (Affidavit and Grievance Forms).

In support of summary judgment in the case, the Defendant Sapp has submitted an affidavit wherein she attests that she is a Sergeant assigned to the Kershaw Correctional Institution. Sapp attests that on or about August 29, 2007, she observed Plaintiff yelling at another correctional officer in an inappropriate manner. Sapp attests that she believed the Plaintiff's behavior to be confrontational and unacceptable and a security risk, so she attempted to escort Plaintiff from his holding cell area. Sapp attests that Plaintiff was given several directives, but refused to obey orders. She then placed her left hand on Plaintiff's right elbow and her right hand on Plaintiff's wrist and placed him against the wall until backup officers arrived. Sapp attests that Plaintiff was sent to the medical department for evaluation immediately after the incident, and that his injuries, if any, were superficial in nature. Sapp attests that Plaintiff was charged with refusing to obey orders, and that on or about September 4, 2007, he accepted the sanctions imposed and chose not to dispute the charges. See generally, Sapp Affidavit. See also Sapp Affidavit Exhibit A (Incident Report) and Exhibit B (Disciplinary Hearing Report).

The Defendant Hardin has also submitted an Affidavit wherein she attests that she is the Administrative Coordinator of the Inmate Grievance Branch of the South Carolina Department of Corrections. Hardin attests that every prison inmate, including the Plaintiff, has equal access and opportunity to file grievances with the Department of Corrections. Hardin attests that, pursuant to SCDC Policies and Procedures, all inmate grievances must be filed within fifteen (15) days of the



alleged incident, with the grievant also being able to appeal a Warden's decision with respect to a grievance by filing a Step II appeal with the Division Director of Operations. Inmates may also file and serve a notice of appeal to the Administrative Law Division. A copy of the SCDC Policy and Procedure with respect to the inmate grievance system is attached to Hardin's affidavit as Exhibit A.

Hardin attests that on September 7, 2007, Plaintiff filed a Step I Grievance (KRCI1483-07) alleging that the Defendant Sapp physically assaulted him resulting in bruising to his arm. Hardin attests that this grievance was processed and forwarded to the Division of Investigation on September 10, 2007 in accordance with SCDC Policy. See also Exhibit B to Hardin Affidavit. Hardin attests that on or about November 7, 2007, the Defendant Warden Reynolds denied Plaintiff's grievance, citing the appropriate use of force as well as Plaintiff's decision to plead guilty and accept administrative resolution on the disciplinary charges. Hardin attests that Plaintiff signed for the Warden's decision on his Step I Grievance on November 7, 2007, and was informed of his right to appeal the decision within five (5) days. Hardin attests, however, that Plaintiff did not file his Step II Grievance Appeal until July 28, 2008, over eight (8) months after the Step I Grievance response was served. See also Exhibit C to Hardin Affidavit. See generally, Hardin Affidavit with attached Exhibits.

The Defendant Street has also submitted an affidavit wherein she attests that she is a correctional officer assigned to the Kershaw Correctional Institution, and that on or about August 29, 2007 she was working the control room for the Hickory Unit at KCI. Street attests that Plaintiff began yelling at her and acting confrontational, and that she observed the Defendant Sapp attempt to escort Plaintiff from his holding cell area due to security concerns associated with his behavior. Street attests that she observed Plaintiff ignore several direct orders given by Sapp in an effort to



peacefully escort him from the holding cell area, and that she further observed Sapp appropriately secure the Plaintiff until backup officers arrived to help. Street attests that the amount of force applied by Sapp was in a good faith effort to reasonably maintain or restore discipline, and that any injuries Plaintiff incurred were superficial in nature, if any were even incurred. See generally, Street Affidavit, with attached Exhibit (Incident Report).

Finally, the Defendants have submitted an affidavit from Harry McKinney, who attests that he is a treating physician for the Department of Corrections, assigned to the Kershaw Correctional Institution. McKinney attests that on August 29, 2007 Plaintiff reported to the KCI clinic at the request of SCDC's security, where he was examined by Nurse Joyce Lloyd following an incident involving Sergeant Melissa Sapp. McKinney attests that Plaintiff was examined for any signs of trauma, bruising, restricted range of motion or inflamation, and was observed to have a pinpoint scratch along with three (3) other very small superficial scrapes on his arm. McKinney attests that Plaintiff refused treatment as evidenced by his signature on the Refusal of Medical Advice form. McKinney has attached to his affidavit a copy of the medical health services summary with this screening (Exhibit A) as well as the signed refusal or medical service advice form. (Exhibit B). See generally, McKinney Affidavit.

As attachments to his responses in opposition to summary judgment, Plaintiff has submitted a copy an Incident Report Supplement dated August 29, 2007, wherein it is noted that Plaintiff was being charged with "refusing", as well as a copy of an SCDC Health Services Medical Summary form for August 29, 2007, which notes that the attending nurse "saw one very small pin point scratch with pin head size dot of blood and three other very small superficial scratches" on the Plaintiff. This medical summary also reflects that Plaintiff stated that he did not need to be seen, and that he completed and signed the refusal of medical service form. See Plaintiff's Exhibits.



**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants first assert, inter alia, that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions[3] under section 1983

---

[3]There is no definition for the term "prison conditions" contained in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

(continued...)



of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this burden, Defendants point to the evidence they have submitted showing that Plaintiff failed to timely file his Step II grievance, resulting in it being returned unprocessed for failure to comply with the filing deadlines. Cf. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"]; see also Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003)[Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge defendants' evidence that he did not pursue his administrative remedies]. Plaintiff attests in his affidavit, however, that he filed his Step II Grievance on November 8, 2007, only four days after his Step I Grievance had been denied by the Warden. Plaintiff attest that Defendants' assertion that he did not pursue his Step II Grievance until 2008 is a "lie", and notes that his Step II Grievance is dated November 8, 2007, even though it has been marked "dated received" July 28, 2008.

After careful consideration of this evidence, the undersigned has determined that Plaintiff's sworn statement, together with the grievance itself showing a date of November 7, 2007

---

[3](...continued)
Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir. 1999) (quoting 18 U.S.C. § 3262(g)(2)); Almandiv v. Ridge, 201 Fed.Appx. 865 at *2 (3d Cir. 2006); Neal v. Goord, 267 F.3d 116, 2001 WL 1178293 (2d Cir. Oct 04, 2001) (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)).



next to Plaintiff's signature, is sufficient to raise a genuine issue of fact as to whether Plaintiff properly exhausted his administrative remedies prior to bringing this lawsuit. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]. Therefore, Defendants are not entitled to dismissal of this action for failure of the Plaintiff to exhaust his administrative remedies. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)[At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"].

**II.**

With respect to the merits of Plaintiff's claims, as employees of the Department of Corrections, the Defendants are all subject to suit for damages under § 1983 in their individual capacities. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is seeking damages against these Defendants in their individual capacities. Nonetheless, after careful review of the filings in this case as well as the arguments of the parties, the undersigned finds and concludes that Plaintiff's claims are without merit, and that the Defendants are entitled to summary judgment.

First, with respect to Plaintiff's excessive use of force claim against the Defendant Sapp, this claim is patently without merit. When reviewing allegations of excessive force, the Court must consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers,

- 9 -



475 U.S. 312, 321 (1986). See Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; see also United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991); Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); Wilson v. Williams, 83 F.3d 870, 873 (7th Cir. 1996) [applied to pretrial detainee]; Thomas v. Sawyer, No. 97-2475, 1999 WL 155704 at *3 (N.D.Tex. Mar. 11, 1999); Moore v. Martinez County Jail, No. 98-731, 1998 WL 602113 at *2 (N.D.Cal. Sept. 4, 1998).  Here, even under Plaintiff's version of this event, the physical contact and confrontation between Plaintiff and Sapp was only minimal, lasting at most a few seconds, and the mere fact that Plaintiff was physically restrained does not mean that his constitutional rights were violated.  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"].

    Defendants exhibits also show the minimal and brief nature of this confrontation, and Plaintiff himself concedes in his filings that he refused to go with Sapp when he was instructed to do so, instead telling her that he would not obey her instructions but would only deal with a Lieutenant or Captain.  The amount of force then used by Sapp in response to Plaintiff's actions, even assuming Plaintiff's version of the facts to be true for purposes of summary judgment, is not sufficient to create a genuine issue of fact as to whether excessive force was used under the circumstances of this case. Further, Defendants they have also submitted an affidavit from a licensed physician who attests that Plaintiff did not suffer any significant or serious injury as a result of this particular incident, a fact supported by the medical evidence in the case, including Plaintiff's own evidence.  See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994)[absent the most extraordinary



- 10 -

circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury de minimis]; See also Farmer v. Brennan, 511 U.S. 825, 837 (1994)[A defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]. Plaintiff's claims against the other Defendants arising out of this incident are similarly without merit, as they all derive from his underlying claim of excessive force and improper conduct on the part of Sapp. House v. New Castle Co., 824 F.Supp. 477, 485 (D.M.D. 1993)[Plaintiff's conclusory allegations insufficient to maintain claim]. Therefore, while Plaintiff may conceivably have some sort of state law claim he could pursue arising from this incident, his assertion of a federal constitutional claim is without merit. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].

Plaintiff's general and conclusory allegations about the conditions of the holding cell he was placed into are also insufficient to set forth a claim of constitutional magnitude. Cf. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Plaintiff himself concedes that he was only in this cell for a little over five hours, and he has presented no evidence to show that he suffered any harm as a result of his stay in this allegedly unkept and soiled cell. Cf. Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that conditions in detention facility violated his due process rights, as detainee failed to allege

- 11 -



remedial injury]; see also Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; cf. Beverati v. Smith, 120 F.3d 500, 504 and n. 4 (4th Cir. 1997) [accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."]; Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988)[prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted].

Finally, Plaintiff has presented no evidence to support his claim of racial discrimination. Indeed, it is difficult to discern what the basis of this claim even is. Plaintiff alleges that both and he and white inmate James Butler, along with some other inmates (racial identities unknown), were initially denied entrance to the canteen, but were all then allowed into the canteen by another correctional officer. Plaintiff was later threatened with a write up by the Defendant Sapp for failing to produce an ID when requested and then restrained when he refused to comply with a directive, but it is unclear what this has to do with inmate Butler. Indeed, Plaintiff does not even mention this supposedly "racial" angle to this claims in his administrative grievances. See Exhibits (Plaintiff's Greivances). Hence, any such claims should be dismissed. Cf. Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)["(Plaintiff's) conclusory allegations of racial



discrimination are not sufficient to establish liability."]; <u>Jaffe v. Federal Reserve Bank of Chicago</u>, 586 F.Supp. 106, 109 (N.D.Ill. 1984) [A plaintiff "cannot merely invoke his race in the course of the claim's narrative and automatically be entitled to pursue relief"]; <u>Buford v. Sutten</u>, No. 04-959, 2005 WL 756092 at * 3 (W.D.Wis. Mar. 29, 2005)["An individual seeking relief on a claim of race discrimination under the equal protection clause must allege facts suggesting that a person of a different race would have been treated more favorably."](citing <u>Jaffe v. Barber</u>, 689 F.2d 640, 643 (7th Cir. 1982)).

### Conclusion

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

May 15, 2009
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> **Larry W. Propes, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

